BACON et al., Appellees,

v.

WEST AMERICAN INSURANCE COMPANY, Appellant;
State Farm Fire & Casualty Company.

[Cite as *Bacon v. W. Am. Ins. Co.* (1996), 115 Ohio App.3d 433.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950864.

Decided July 31, 1996.

*Droder & Miller Co., L.P.A., Richard J. Rinear* and *Edward J. Collins,* for appellees.

*Joseph K. Wehby,* for appellant.

PAINTER, Judge.

Lawrence M. Bacon, Jr. ("Bacon Jr.") was killed as a passenger in a car driven by Scott Andres into a tractor-trailer truck. Bacon Jr.'s father, plaintiff-appellee Lawrence M. Bacon, Sr. ("Bacon Sr."), was appointed administrator of his son's estate. Andres had an insurance policy with Nationwide Insurance Company ("Nationwide"), which had liability limits of $100,000 per person and $300,000 per accident.

Bacon Jr. held an uninsured/underinsured motorist policy with State Farm Insurance Company ("State Farm"). The State Farm policy had underinsured liability limits of $50,000 per person and $100,000 per accident. Bacon Sr. and his wife, plaintiff-appellee Patricia Ann Bacon, held two policies with uninsured/underinsured coverage issued by West American Insurance Company ("West American"). Each had uninsured/underinsured liability limits of $100,000 per person and $300,000 per accident. Bacon Sr.'s children, including Bacon Jr., were insureds under the West American policies.

Nationwide paid $100,000 to Bacon Jr.'s estate, for which Bacon Sr., as administrator of Bacon Jr.'s estate, executed a release of claims against Donald C. Andres and the estate of Scott D. Andres, deceased. Bacon Sr. obtained State Farm's authorization to accept Nationwide's offer, but neither notified West American of the pending offer nor obtained West American's authorization to accept it.

One and one-half years after accepting Nationwide's payment, the Bacons made an underinsured motorist claim with West American. West American denied the claim. The Bacons filed for a declaratory judgment that State Farm and West American each had an obligation to pay benefits under the respective underinsured policies for damages alleged as a result of Bacon Jr.'s untimely demise.[1] The Bacons filed for summary judgment, which the trial court granted following argument on the motion.

West American appeals. In its sole assignment of error, West American asserts that the trial court erred in declaring that it owes underinsured benefits to the Bacons. West American advances three theories to support its assignment of error. West American argues that (1) a beneficiary of a wrongful-death claim is barred from seeking underinsured benefits after the administrator of the estate has settled claims against the tortfeasor, (2) a twenty-two-month delay in notification bars presentment of an underinsured motorist claim, and (3) the state of insurance law at the time that the settlement was consummated (prior to

---

1. The Bacons settled with State Farm outside the record; therefore, State Farm is not a party to this appeal.

*Savoie v. Grange Mut. Ins. Co.* [1993], 67 Ohio St.3d 500, 620 N.E.2d 809) governs these issues.

West American argues that a beneficiary of a wrongful-death claim is barred from seeking underinsured benefits after the administrator of the estate has settled claims against the tortfeasor. The insurance contract in the case at bar contains a subrogation provision requiring consent to any settlement entered into by the insured that releases a tortfeasor. The purpose of this type of clause is to prevent insureds from extinguishing any right of subrogation that West American would have against that tortfeasor. The Supreme Court of Ohio has held such subrogation provisions not only valid and enforceable, but a condition precedent to the insurer's duty to provide underinsured motorist coverage. *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus. Subsequently, the Supreme Court modified its holding, but only with respect to the definition of consent by an insurance company to a settlement. The court held that an insurer that received notice of a pending settlement and had a reasonable opportunity to protect its subrogation rights would not be able to use the subrogation clause to bar payment of underinsurance benefits. *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, paragraph two of the syllabus.

We urge that the syllabus in *Bogan* should be overruled insofar as it holds that insureds' duties under subrogation clauses are conditions precedent to coverage. Similar breaches of clauses in other contracts are in no way considered conditions precedent to performance. The Second District recently summarized the remedies for breach of contract as "only those damages which are the natural and probable consequences of the breach or those damages resulting from the breach that were within the contemplation of the parties at the time of the making of the contract." *St. Henry Tile Co., Inc. v. Cain* (Dec. 20, 1995), Darke App. No. 1371, unreported, 1995 WL 783603. Contract law should govern the remedy to the insurer when an insured agrees to a settlement in violation of a subrogation clause. In this case, Bacon Sr.'s failure to notify West American arguably caused no harm because Andres had no assets and West American's subrogation rights were worthless. However, unless and until the Ohio Supreme Court modifies or overrules the syllabus in *Bogan,* we are constrained to follow it.

In the case at bar, West American's policy included a subrogation clause as a precondition to coverage. The clause states:

"A. If we make a payment under this policy and the person to whom or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do: 1. Whatever is necessary to enable us to exercise our rights; and 2. Nothing after loss to prejudice them. * * * B. If we make a payment under this policy and the person to or for whom

payment is made recovers damages from another, that person shall: 1. Hold in trust for us the proceeds of the recovery; and 2. Reimburse us to the extent of our payment."

Bacon Sr. settled with the tortfeasor and his insurance company, releasing them from further liability. Bacon Sr. did not notify West American until after the settlement was executed. By executing the settlement without notice to and consent by West American, Bacon Sr. breached this subrogation clause in the insurance contract. As a result, Bacon Jr.'s insurance beneficiaries were no longer entitled to recover damages caused by the underinsured motorist.

Bacon Sr. argues that *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555, applies to make the clause unenforceable. This reading of *Sexton* is incorrect. *Sexton* requires payments to insureds legally entitled to recover damages caused by an uninsured motorist. *Sexton, supra,* at 434, 23 O.O.3d at 387, 433 N.E.2d at 558. Here, the insured was no longer legally entitled to recover the instant that the settlement extinguished West American's subrogation rights against the tortfeasor, which was an enforceable precondition to coverage.

Therefore, because we are constrained by *Bogan*, we agree with West American that Bacon Sr.'s failure to give West American that opportunity precludes underinsurance coverage in this case. We need not address West American's other arguments to determine that West American does not owe underinsured motorist benefits to the Bacons.

For the reasons stated above, we reverse the judgment and remand the cause to the trial court with instructions to enter judgment for West American.

*Judgment accordingly.*

Marianna Brown Bettman, P.J., and Hildebrandt, J., concur.